IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAUDES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-121C |
| | ) | (Judge Wheeler) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR DISMISSAL OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the complaint be dismissed for lack of jurisdiction, or failure to state a claim upon which relief may be granted or, in the alternative, that the Court enter summary judgment in favor of the Government. In support of our motion, we rely upon the complaint, this brief, and the accompanying Defendant's Proposed Finding of Uncontroverted Facts.

STATEMENT OF THE CASE

I. The Nature Of Plaintiff's Claim

Plaintiff, Laudes Corporation ("Laudes") asserts that it entered into a contract ("the contract" or "the express contract") with the Iraqi Government, to provide support services for Iraqi Army units near the restive city of Fallujah. See Comp. ¶ 29.[1] The contract was, in fact, signed by an Iraqi government official as the contracting officer; provided that payment would be made by the Iraqi Ministry of Defense; and that it would be administered by the "PCO

[1] "Comp. ¶__" refers to a paragraph of plaintiff's complaint in this action.

Contracting Activity." See Comp. ¶ 29; A1.[2] The contract further provided that payment and disputes would be handled "similar" to United States law, and that "[t]he Iraqi Government will make payment similar to the United States Laws.. . ." A10, paras (b) and (d).

Laudes asserts that representatives of the Project Contracting Office ("PCO"), a United States Government entity, "promised Laudes that PCO would facilitate and obtain payment for the work Laudes performed on the referenced contract." Comp. ¶ 57. This, apparently, is the implied-in-fact contract that Laudes alleges forms the basis of its complaint. Laudes further asserts that these officials had authority to bind the United States contractually, as an integral part of their duties, and that, "alternatively," the PCO contracting officer for the contract was aware of the statements and did not disavow them. Comp. ¶ 61. Inasmuch as Laudes alleges that it did not receive full payment from the Iraqi government for the invoices that it submitted, it claims that the United States Government breached its alleged implied-in-fact contract to facilitate said payment. Comp. ¶¶ 62-64.

II. Statement Of Facts

The United States incorporates by reference Defendant's Proposed Finding Of Uncontroverted Facts ("DPFUF"), filed separately with this brief, as its statement of facts.

ARGUMENT

Laudes has not pled a valid implied-in-fact contract for which this Court possesses jurisdiction. First, as a matter of black-letter law, the written contract, itself, obviates any alleged implied-in-fact contract upon the same subject matter. E.g., Schism v. United States, 316

[2] "A__" refers to a page of the appendix attached to "Defendant's Proposed Finding Of Uncontroverted Facts," filed simultaneously with this motion.

F.3d 1259, 1278 (Fed. Cir. 2002). Moreover, to the extent that the American PCO personnel who administered the contract upon behalf of the Iraqi Ministry of Defense made any promises relating to their administration of the contract,[3] such promises would have related to their performance as agents of the Iraqi government, and thus not create a contract between Laudes and the United States, within this Court's jurisdiction.

I. The Standard Of Review

A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy. Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). In considering such a motion, the court assumes all well-pled factual allegations as true and makes all reasonable inferences in favor of the non-movant. See id. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)(internal citations omitted). In order to survive a 12(b)(6) motion to dismiss, the complaint must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claims. See id. at 1966.

For jurisdictional challenges, brought pursuant to RCFC 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, 298

---

[3] Although we deny that such promises were made, we accept them, arguendo, for the purposes of this motion.

U.S. 178, 189 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996).

If, in the alternative, the Court considers this motion as a motion for summary judgment, the familiar standards of summary judgment need only a brief re-statement here. The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc.v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 168 F. Supp. 213, 216 (Ct. Cl. 1958), cert. denied, 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

## II. The Express Written Contract Precludes The Alleged Implied In Fact Contract Upon The Same Subject Matter

There can be no implied-in-fact contract when there is an express contract between the parties dealing with the same subject matter. Schism; Trauma Service Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997); Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990); ITT Fed. Support Services v. United States, 531 F.2d 522, n.12 (Ct. Cl. 1976). The Supreme Court explained the basis for this rule of law in Klebe v. United States, 263 U.S. 188

(1923): "A contract implied in fact is one inferred from the circumstances or acts of the parties; but an express contract speaks for itself and leaves no place for implications." 268 U.S. at 192.

The contract here – an express contract – included provisions dealing directly with the issue of payment for its performance. In particular, the contract provided that "Invoices will be handled similar to the United States Laws with the Prompt Payment Act.. . ." A11, para (g)(2). Additionally, under the heading ,"Prompt Payment," the contract provided that "[t]he Iraqi Government will make payment similar to the United States Laws with the Prompt Payment Act (31 U.S.C. 2903) and prompt payment regulations at 5 CFR part 1315." A11, para (i)(2).

Inasmuch as the implied-in-fact contract alleged in the complaint was that the "PCO would facilitate and obtain payment for the work Laudes performed on the referenced contract," see Comp. ¶ 57, the express contract deals "with the same subject matter." See Schism, 316 F.3d 1278.

Because the PCO personnel who allegedly made the implied in fact contract also represented the Government of Iraq for purposes of creating the express contract, see, generally, Comp. ¶29; A1 (block 16), it is of no moment to our argument that the express contract here was with the Government of Iraq, and not with the PCO. The reasoning behind the pertinent rule of law is that implied-in-fact contracts rely upon "the circumstances and acts of the parties," and that express contracts definitively end speculation upon the parties' intent, "leav[ing] no place for implications." Klebe, 268 U.S. at 192. Thus, if the existence of an express contract addresses the intent of the parties to an alleged implied-in-fact contract, the technical identity of the parties need be of no consequence. For example, in Swanson v. Levy, 509 F.2d 859 (9th Cir. 1975), the court of appeals performed an analysis equivalent to "piercing the corporate veil" to

determine whether an express contract should be held to obviate an implied-in-fact contract. 509 F.2d 861-62 (finding express contract to be with both individual and corporation). The alleged parties to the implied-in-fact contract here, in addition to Laudes, were the PCO officials who provided the express contract to Laudes and administered it upon behalf of the government of Iraq, see Comp. ¶61, which Laudes avers had no role in drafting the express contract. Comp. ¶20. Accordingly, the express contract manifests the intent of both Laudes and those PCO actors who allegedly made the implied-in-fact contract, precluding this Court's consideration of the implied-in-fact contract. Schism; Trauma Service Group; Atlas; ITT Fed. Support Services.

## III. The United States Cannot Be Sued For The Alleged Failure Of Iraq To Pay Upon Its Contract With Laudes

This Court does not possess jurisdiction to entertain claims relating to a foreign government's failure to pay upon a contract. The relevant portion of the Tucker Act, which confers this Court's jurisdiction, only applies to "express or implied contract[s] with the United States." 28 U.S.C. 1491(a)(1) (emphasis added).

Nothing alleged in Laudes' complaint refers to monetary payments promised to be made, or obligations promised to be undertaken, by the United States. Instead, the alleged implied-in-fact contract is that the PCO members would "facilitate and obtain" payment from the government of Iraq. Comp. ¶57. These alleged promises can only have been made by the PCO officials in their capacities as agents of the Iraqi government by virtue of their role as its contract administrators. See A1, block 16. This is because they cannot reasonably be held to have been making a promise, as agents of the United States, of what the government of Iraq would do. Cf. Goolsby v. United States, 21 Ct. Cl. 629, 632 (1990) (quoting, with approval, the argument that

the Government cannot be held responsible for "failing to obtain an agreement . . . from a third party over whom . . . the Government absolutely had no control or authority"). Whatever failures the Iraqi Government and those acting as its contract administrators or agents[4] may have had, this Court does not possess jurisdiction to address them.

CONCLUSION

For these reasons the Court should dismiss Laudes' complaint and enter judgment in favor of the United States.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

[4] Laudes alternatively alleges in its complaint that, "the PCO contracting officer for [the contract] was aware of the pertinent statements, actions and assurances of the foregoing PCO officials, and never objected to or disaffirmed them, or directed such PCO officials the cease making such statements, actions, and directions." Comp. ¶61. The contracting officer for the contract was Dr. Ziad Cattan, of the Iraqi Ministry of Defense. Comp. ¶29; A1, block 31(a). Plainly, Dr. Cattan did not possess authority to contract for the United States, and Laudes has not alleged as much.

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305–7586
Fax: (202) 514-7969

Attorneys for Defendant

June 16, 2008