IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAUDES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-121C |
| | ) | (Judge Wheeler) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR DISMISSAL
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY

Defendant, the United States, respectfully submits this reply brief in support of our "Motion For Dismissal Or, In The Alternative For Summary Judgment" ("our motion" or "the Government's motion"). In our motion, we demonstrated that, by rule of law, plaintiff, Laudes Corporation's ("Laudes") written contract with the government of Iraq ("the express contract") trumped any claims that it had an implied-in-fact contract with the United States over the same subject matter. We also demonstrated that a promise by United States' officials to facilitate payment by the government of Iraq could not be within this Court's jurisdiction. Laudes's response ("Pl. Opp.") presents arguments that are both internally inconsistent and inconsistent with its complaint. At bottom, Laudes's extensive efforts to muddy the issues presented in this case do not change the fact it has no implied-in-fact contract with the United States.

I. The Nature Of Plaintiff's Claim

Despite the allegation in Laudes's opposition brief that it is pursuing a Contract Disputes Act, 41 U.S.C. § 601, et seq., ("CDA"), claim against the United States over the express contract

that it has with the government of Iraq, see Pl. Opp. 19, n.4,[1] Laudes's claim before the Court here remains that the very same United States Government officials who negotiated the express contract with Laudes also made an implied contract with Laudes that they would "facilitate and obtain" payment from the government of Iraq. See Comp. ¶ 57.[2] Notwithstanding Laudes's extensive arguments, this remains the allegedly breached contract before the Court.

## II. By Law, The Express Contract Precludes The Alleged Implied-In-Fact Contract

The basis of our motion for summary judgment motion is that black-letter law provides that an express contract[3] precludes an implied contract over the same subject matter between the same parties. Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002); Trauma Service Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997); Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990); ITT Fed. Support Services v. United States, 531 F.2d 522, n.12 (Ct. Cl. 1976). The reason for this rule of law was enunciated by the Supreme Court in Klebe v. United States, 263 U.S. 188 (1923): "A contract implied in fact is one inferred from the circumstances or acts of the parties; but an express contract speaks for itself and leaves no place for implications." 268 U.S. at 192. This is why, we explained, the technical identity of the

---

[1] We believe it possible that this claim would be precluded by Sharman Company, Inc. v. United States, 2 F.3d 1564 (Fed. Cir. 1993), rev'd on other grounds, Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995), since plaintiff has brought this suit prior to securing a contracting officer's decision upon the claim.

[2] "Comp. ¶__" refers to a paragraph of plaintiff's complaint in this action.

[3] Because the express contract was not part of the complaint, we were required to attach the "single document," see Pl. Opp. 2,3, to our brief, making this portion of our motion into one for summary judgment, even though, in many ways, it is akin to a motion for judgment upon the pleadings.

parties is irrelevant if the express contract and the alleged implied-in-fact contract were negotiated by the exact same individuals: the "circumstances and acts" of the parties to the implied-in-fact contract are not "inferred" to be an implied-in-fact contract when the same persons have produced an express contract. See id.

Laudes's response to this straightforward reading of the law is bluster – inter alia, referring to our argument as "astounding sophistry," Pl. Opp. 17 – but does not seriously address the merits. Indeed, it is Laudes which presents the inconsistent position of alleging that the United States was the real party to the express contract with Laudes, see, generally, Pl. Opp. 19-25, while nevertheless attempting to escape the implications of Klebe, Schism, et al, by asserting that the United States was not a party to the express contract.[4] In any event, for reasons beyond its contradictory nature, Laudes's response does not survive scrutiny.

Although Laudes's response provides a summary of the facts of each of the cases cited by the Government, see Pl. Opp. 14-17, it never explains why these factual summaries should change the rule of law enunciated therein and set forth in our motion. Laudes's most direct response to our analysis of Klebe is its argument that the parties' possessing the same technical

[4] Laudes actions in filing a CDA claim against the United States on the express contract is far more inconsistent with its argument here than it admits. See Pl. Opp. 19, n.4. The claim, certified to be true to the best of Laudes's knowledge and belief, see 41 U.S.C. § 605(c), includes the following statement in its "alternate" basis for recovery: "the United States was the party with whom Laudes contracted." SA21 ("SA__" is a page of the supplemental appendix we attach to this brief). But Laudes's only defense to our argument here is that the express contract is not a contract with the United States. While we have always, consistently, maintained that the express contract is not one with the United States, Laudes selects the identity of the contracting parties depending upon whichever arguments it chooses to advance. Had Laudes already filed and defended its threatened CDA lawsuit, the doctrine of judicial estoppel could well preclude such gamesmanship. E.g., New Hampshire v. Maine, 532 U.S. 742, 749-51 (2001).

identity is necessary for application of the rule of law because the express contract can only address the relationship between the parties to that contract. Pl. Opp. 17. No court has ever articulated such a rationale; moreover, Laudes's argument is particularly misguided here because the express contract actually did address the relationship of Laudes to the United States Government by clearly stating that the contract would be administered by the American Project Contracting Office ("PCO"), A1[5], and explaining and setting forth payment mechanisms, along with providing recourse (against the Iraqi government) should there be disputes or late payment. A10, paras (b) and (d).

Indeed, Laudes's argument is further undercut in light of its allegation that the Iraqi government had no role in drafting the express contract. See Comp. ¶ 20. By Laudes's proposed reading of the law, the express contract would speak dispositively of the intent of the government of Iraq, which had no role in its creation, but bear no relationship to the intentions of the individuals associated with the PCO who actually drafted the express contract and also allegedly created a separate implied-in-fact contract. This is an absurd result.

Finally, and more pointedly, the language of Klebe is not susceptible to Laudes's attempts to craft the limitation it desires: the rationale for the rule of law articulated by the Supreme Court in Klebe rests upon permissible implications for forming an implied-in-fact contract and the notion that a writing setting forth relevant understandings of the drafters precludes a search outside of that writing for the intentions of those who created it. 268 U.S. at 192. Thus, our citation to Swanson v. Levy, 509 F.2d 859 (9th Cir. 1975) demonstrated (as we

---

[5] "A__" refers to a page of the appendix attached to our earlier-filed "Proposed Findings Of Uncontroverted Fact."

consistently argued) that the courts' interest in analogous cases was more focused upon who negotiated the contract than the actual technical identity of the signatory. To be sure, Swanson is not binding upon this Court, but it harmonizes well with the rule of law set forth by the Supreme Court in Klebe and repeated by the Court of Appeals for the Federal Circuit in Schism, et al.

We further note that Laudes's argument that factual disputes preclude summary judgment here, see Pl. Opp. 7-8, portrays a misunderstanding of the law. We do not, as Laudes would have it, request that the Court make an "inference" precluding an implied-in-fact contract as a result of the existence of the express contract. See Pl. Opp. 11. Rather, the law dictates that a plaintiff cannot succeed in alleging an implied-in-fact contract when there is an existing express contract. E.g., Klebe, Schism. "Inferences" have nothing to do with the argument.

III. The United States Cannot Be Liable For Its Alleged Failure To Obtain Iraqi Payment

The gravamen of our 12(b)(1) and 12(b)(6) motion is that, even if Laudes's claim of an alleged implied-in-fact contract survived the existence of the express contract upon the same subject matter, Laudes's complaint seeks recourse for actions that can only be promised by agents of the Iraqi government, to wit: that Iraq would pay Laudes. This Court does not possess jurisdiction to consider such promises. 28 U.S.C. 1491(a)(1). Laudes's extensive response, which may be summarized as making the assertion that American officials in the PCO controlled the Iraqi government, and not the other way around, see Pl. Opp. 19-25, misses the point completely: Laudes is suing the United States for the Iraqi government's failure to pay it; yet only agents of Iraq may make promises of what Iraq will do. Agents of the United States – in their capacity as agents of the United States and thus able to impose liability upon the United States for which it may be sued – cannot make such promises.

To the extent that Laudes asserts that persons acting in their capacity as agents of the United States could make such a binding promise, the argument has been squarely rejected by the Court of Claims:

> It is well settled that such a warranty as plaintiffs claim will not be implied on the part of the United States where the warranty is not expressly provided for in a statute or contract.

Somali Development Bank v. United States, 508 F.2d 817, 822 (Ct. Cl. 1974) (citations omitted). Indeed , Somali Development Bank is but one of a long line of cases demonstrating that deep involvement by the United States Government in the administration of a contract (even extensive, de facto, control of that contract) does not subject the United States to liability upon that contract. See id., Somerville Technical Services v. United States, 640 F.2d 1276, 1282 (Ct. Cl. 1981); Korea Development Corp. v. United States, 9 Cl.Ct. 167, 173 (1985); Penn Town Builders, Inc. v. United States, 4 Cl.Ct. 677, 683 (1984) (United States Government "conceived, implemented, and supervised . . . project in every detail," but not liable).

Thus, Laudes's numerous allegations that PCO officers controlled the express contract are to no avail and constitute nothing more than a furious attack upon a straw man. Our argument has never been that the United States escapes liability because it was merely Iraq's agent. Rather, our argument is that the alleged promise to facilitate and obtain payment from Iraq, is necessarily only a promise that Iraq or its agents could make, and that the United States never promised to make up any shortfall from the Iraqi government.[6] As amply demonstrated in the cases cited above, Laudes's alleged implied-in-fact contract does not present a promise that

[6] Notably, Laudes has not pled that the United States made such a promise.

may be made by agents of the United States in their capacity as agents of the United States. See also Goolsby v. United States, 21 Ct. Cl. 629, 632 (1990). Accordingly, Laudes does not plead a contract within the Court's jurisdiction.

IV. Laudes's Requested Discovery Is Not Necessary For Resolution Of This Suit

The discovery sought by Laudes, pursuant to RCFC 56(f), is not relevant in any way to the summary judgment portion of our motion, nor is it relevant to our motion to dismiss, to which RCFC 56(f), governing summary judgment, is not applicable in any event. Nothing Laudes seeks to obtain should affect the Court's consideration of the pending motion and the request should be denied.

The only portion of our motion based upon facts outside of the complaint, and thus necessitating characterization as a motion for summary judgment, is the argument that the existence of the express contract precludes Laudes's alleged implied-in-fact contract. Laudes does not deny that the contract that we attached to our earlier motion constituted the express contract, or voice any other doubt upon that matter. Thus, there is no need for any discovery in order to address the only matter for which summary judgment is requested.[7]

The matters for which Laudes seeks extensive, onerous discovery, relate to our second argument, which is that the nature of the alleged implied-in-fact contract is not within this

[7] While we did not explicitly state that the first argument presented in our brief was for summary judgment and that the second was for judgment on the pleadings, this characterization is self-evident. Only the first argument is even arguably dependent upon matters outside of the pleadings (although the existence of the express contract is discussed enough in the complaint that we felt the Court might consider it to be amenable to treatment pursuant to RCFC 12(b)(6)), while our second argument is explicitly premised upon the Court's jurisdiction, based upon the pleadings.

Court's jurisdiction. Of course, as a motion for judgment upon the pleadings, it is not subject to RCFC 56(f), addressing summary judgment. Moreover, Laudes's demand for discovery rests upon the same mischaracterization of our argument that it included in its opposition brief: the notion that our argument rests upon PCO members being completely subject to the dictates of the Iraqi government and the PCO's having no influence with Iraq. We have never made such an assertion, and, as addressed earlier, the Government's involvement in Iraqi contracts is of no consequence to our argument when the express contract, itself, remains a contract with the government of Iraq. E.g., Somali Development Bank; Somerville Technical Services. Whatever title an Army Major may have given himself in an e-mail, see Pl. Opp. 20, there is no dispute, whatsoever, that the express contract, i.e., the document actually executed by Laudes, was signed by Dr. Cattan of the Iraqi Ministry of Defense, as the contracting officer, A1, and the contract made manifestly clear that it was a contract with Iraq. Id. Moreover, Laudes's entire defense to our first (summary judgment) argument is that the express contract is not with the United States, which is generally contradictory to its defense against our second argument.[8]

[8] We underscore that we do not allege the express contract to be with the United States, but premise our first argument upon the allegations in Laudes's complaint that the express contract was negotiated by the same PCO actors who made the alleged implied-in-fact contract. Yet, we are not oblivious to the fact that the evidence that Laudes seeks for use in defending itself from our second argument would severely undercut its defense to our first.

Thus, the arguments that we actually presented in our earlier motion do not need additional discovery to resolve. Naturally, if the Court should disagree in part, it may still resolve those portions of our motion not needing discovery.

CONCLUSION

For these reasons and the reasons stated in our moving brief, the Court should dismiss Laudes's complaint and enter judgment in favor of the United States.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305–7586
Fax: (202) 514-7969

Attorneys for Defendant

August 1, 2008